IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America,                  :
                                           :        Case No. 1:07-cr-60(3)
          Plaintiff,                       :
                                           :        Judge Susan J. Dlott
          v.                               :
                                           :        **Order Denying Motion for**
Paul Volkman,                              :        **Compassionate Release; Denying**
                                           :        **Motion to Appoint Counsel**
          Defendant.                       :

This matter is before the Court on Defendant Paul Volkman's pro se Motion for

Compassionate Release. (Doc. 570.) Volkman has also filed a Motion to Appoint Counsel.

(Doc. 580.) For the reasons that follow, both motions will be **DENIED**.

## I.      BACKGROUND

On May 16, 2007, a grand jury in the Southern District of Ohio returned a multi-count

Indictment against Defendant Paul Volkman, a former physician.[1] (Doc. 2.) After a thirty-five-

day jury trial, Volkman was found guilty on Count 1, conspiracy to distribute controlled

substances; on Counts 2, 3, 16, and 19, maintaining drug-related premises; on Counts 5, 6, 7, 8,

9, 17, 21, and 22, unlawful distribution of controlled substances; on Counts 10, 11, 18, and 20,

causing the death of another by unlawful distribution of a controlled substance; and on Count 14,

possession of a firearm in furtherance of a drug trafficking offense. (Doc. 355.)

On February 14, 2012, the Court sentenced Volkman to four consecutive life sentences

on the unlawful distribution leading to death counts, to be served consecutively with each other

and concurrently with all other counts except Count 14; 240 months of imprisonment on the

conspiracy count and each count of unlawful distribution, to be served concurrently with each

---

[1] The Indictment also included charges against two of Volkman's co-conspirators, Denise Huffman and Alice Huffman. Both co-conspirators pled guilty and testified against Volkman at trial.

other; 120 months of imprisonment on each drug premises count, to be served concurrently with each other, the conspiracy count, and each count of unlawful distribution of a controlled substance; and 60 months of imprisonment on the firearm count, to be served consecutively to all other counts. (Doc. 420.) Volkman is currently incarcerated at USP Tucson, and has no estimated release date given the four life sentences imposed. Federal Bureau of Prisons, *Find an Inmate*, https://www.bop.gov/inmateloc/ (last accessed 8/4/2022).

Volkman filed the instant Motion for Compassionate Release on November 22, 2021, and his counsel filed a supplemental memorandum on January 19, 2022. (Docs. 570, 575.) The Government responded in opposition on February 2, 2022. (Doc. 576.) In support of the Motion, Volkman's counsel also has filed a letter of support written by Rabbi Victor Weissberg, as well as a letter written by Volkman responding to the Government's brief. (Docs. 577, 578.) On July 28, 2022, Volkman also filed a Motion to Appoint Counsel. (Doc. 580.) This matter is now ripe for the Court's review.

## II.    MOTION FOR COMPASSIONATE RELEASE

### A.  Standard of Law

Volkman seeks a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). The Court lacks authority to resentence a defendant, except as permitted by statute. *United States v. Houston*, 529 F.3d 743, 748–49 (6th Cir. 2008). The compassionate release provisions in 18 U.S.C. § 3582(c)(1)(A) were "intended to be a 'safety valve' to reduce a sentence in the 'unusual case in which the defendant's circumstances are so changed, such as by terminal illness, that it would be inequitable to continue the confinement of the prisoner.'" *United States v. Ebbers*, 432 F. Supp. 3d 421, 430 (S.D.N.Y. 2020) (quoting S. Rep. 98-225, at 121 (1983)). A defendant seeking a sentence reduction bears the burden of proof. *Id*. at 426; *United States v. Hill*, No.

5:14CR337, 2020 WL 5104477, at *1 (N.D. Ohio Aug. 31, 2020). Section 3582(c) provides as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c).

After enactment of the First Step Act of 2019, the text of 18 U.S.C. § 3582(c)(1)(A) now makes clear that a defendant can bring a compassionate release motion on his or her own behalf after the defendant either fully exhausts any administrative remedies or waits 30 days from the date his or her warden receives his or her request for release. *United States v. Ruffin*, 978 F.3d 1000, 1004 (6th Cir. 2020). Exhaustion of administrative remedies is a mandatory claim-processing rule. *United States v. Alam*, 960 F.3d 831, 833–834 (6th Cir. 2020). This claims-processing rule "serves important interests" including that "prison administrators can prioritize the most urgent claims" and "investigate the gravity of the conditions supporting compassionate release and the likelihood that the conditions will persist." *Id.* at 835.

Where, as here, a defendant has exhausted administrative remedies,[2] the district court must then (1) determine whether "extraordinary and compelling reasons" warrant a reduction and (2) weigh the relevant sentencing factors listed in § 3553(a). *United States v. Jones*, 980 F.3d 1098, 1101, 1108–09 (6th Cir. 2020).[3] "Congress did not define what constitutes an 'extraordinary and compelling reason,' except to state that '[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.'" *United States v. Hunter*, 12 F.4th 555, 561 (6th Cir. 2021) (quoting 28 U.S.C. § 994(t)) (alteration in original). Courts generally have discretion to define what constitutes "extraordinary and compelling" reasons. *Id.* at 562. Nonetheless, the Sixth Circuit recently defined two restrictions on that discretion:

> First, non-retroactive changes in the law, whether alone or in combination with other personal factors, are not "extraordinary and compelling reasons" for a sentence reduction. Second, facts that existed when the defendant was sentenced cannot later be construed as "extraordinary and compelling" justifications for a sentence reduction.

*Id.*; *United States v. McKinnie*, 24 F.4th 583, 586–90 (6th Cir. Jan. 26, 2022) (citing *Hunter*).[4]

The § 3553 factors referenced in the statute include (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the need for the sentence imposed to reflect the seriousness of the offense; (3) the need to protect the public from further crimes of the defendant; (4) the sentencing guideline range; and (5) the need to avoid unwarranted sentence disparities among defendants with similar records guilty of similar conduct. 18 U.S.C. §

---

[2] On December 9, 2020, Volkman, through a formerly-retained attorney, sent a formal request for compassionate release to the warden of his facility. (Doc. 570 at PageID 9760–62.) Such request was denied on December 18, 2020. (*Id.* at PageID 9763–64.) Volkman filed the instant Motion on November 22, 2021, more than 30 days after the warden's denial.

[3] The Sixth Circuit determined in *Jones* that the only U.S. Sentencing Commission Policy Statement potentially applicable to motions for compassionate release—U.S.S.G. § 1B1.13—is inapplicable to cases filed by federal inmates. 980 F.3d at 1109, 1111. Therefore, the district court has full discretion to define "extraordinary and compelling reasons" without reference to the policy statement in § 1B1.13. *Id.* at 1111; *United States v. Elias*, 984 F.3d 516, 519–20 (6th Cir. 2021).

[4] *But see United States v. Owens*, 996 F.3d 755, 763–64 (6th Cir. 2021); *United States v. McCall*, 20 F.4th 1108, 1116 (6th Cir. 2021), *rehearing en banc granted, vacated*, No. 21-3400 (6th Cir. April 1, 2022).

3553(a). These factors implicitly allow the Court to consider the amount of time served when determining if a reduction in sentence is appropriate. *See United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020). Also, district courts can consider non-retroactive changes in law relevant to sentencing as part of its weighing the § 3553(a) sentencing factors. *See Hunter*, 12 F.4th at 564; *United States v. Jarvis*, 999 F.3d 442, 445 (6th Cir. 2021). District courts are encouraged to be "explicit and particular with their factual reasoning" when they consider the § 3553(a) factors. *Jones*, 980 F.3d at 1113.

### B. Analysis

#### i. Extraordinary and Compelling Reason

Volkman contends that his medical conditions, in combination with the COVID-19 pandemic, present an extraordinary and compelling reason warranting his compassionate release. He is seventy-five years old and claims to be suffering from type 2 diabetes mellitus; heart diseases, including cardiac syncopal episodes and occlusion of right main coronary artery; chronic kidney disease; hypertension treated with three different medicines; liver disease; pancreatic insufficiency; obesity; and small vessel disease. (Doc. 570 at PageID 9752.) Volkman asserts that given his medical conditions he is at a heightened risk of severe illness if he contracts COVID-19. "During the COVID-19 pandemic, courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his [or her] prison facility." *United States v. Whitmire*, No. 1:17-cr-34, 2021 WL 3883748, at *3 (S.D. Ohio Aug. 31, 2021) (quoting *United States v. Provost*, 474 F. Supp. 3d 819, 825 (E.D. Va. 2020)) (alteration in original). "Generalized fears of contracting COVID-19, without more, do not constitute a compelling reason." *United States v. Bothra*, 838 F. App'x 184, 185 (6th Cir. 2021).

The Court finds that Volkman has failed to present an extraordinary and compelling reason for his release. He does correctly note that the Centers for Disease Control and Prevention ("CDC") has indicated that older adults are at a higher risk of severe illness if they contract COVID-19. CDC, "COVID-19 Risks and Vaccine Information for Older Adults," https://www.cdc.gov/aging/covid19/covid19-older-adults.html (last accessed 8/4/2022). CDC guidance also states that several medical conditions Volkman is currently suffering from, including diabetes, heart disease, chronic kidney and liver disease, and obesity, also increase one's risk of severe illness from COVID-19. CDC, COVID-19, "People with Certain Medical Conditions," https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed 8/4/2022). "Prior to the development of the COVID-19 vaccines, courts would generally consult the guidance on high-risk factors published by the [CDC] . . . to determine whether a defendant's specific conditions placed the defendant at a higher risk of suffering severe illness from COVID-19." *United States v. Coleman*, No. 15-20624, 2022 WL 1026542, at *2 (E.D. Mich. Apr. 6, 2022). Yet following the development of COVID-19 vaccines, the proper inquiry for a district court is now whether the defendant has access to a COVID-19 vaccine. "A defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an 'extraordinary and compelling reason' warranting a sentence reduction." *United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021) (citation omitted); *see also United States v. Inman*, No. 3:20-cv-00154, 2022 WL 304660, at *4 (M.D. Tenn. Feb. 1, 2022) ("[G]iven the wide availability of the COVID-19 vaccine, *Lemons* forecloses a substantial portion of inmates' arguments that their underlying health conditions combined with the COVID-19 pandemic constitute extraordinary and compelling reasons for release.").

Volkman represents he has received two doses of the Moderna COVID-19 vaccine in February and March of 2021. (Doc. 570 at PageID 9753.) "Once an inmate is vaccinated against COVID-19, there is little-to-no risk of contracting severe COVID-19 and thus no extraordinary and compelling reason to justify compassionate release." *United States v. Ho*, No. 1:17-cr-0057, 2021 WL 4440189, at \*4 (S.D. Ohio Sept. 28, 2021); *see also United States v. Fowler*, No. 21-5769, 2022 WL 35591, at \*2 (6th Cir. Jan. 4, 2022) ("[The defendant] initially rejected the COVID-19 vaccine but has since received at least one dose, so he cannot demonstrate that his COVID-19 risk is an 'extraordinary and compelling' justification for compassionate release."); *United States v. Shade*, No. 2:19-cr-88, 2021 WL 2069759, at \*2 (S.D. Ohio May 24, 2021) ("[The defendant] is now fully vaccinated. Accordingly, the Court finds that the Coronavirus Pandemic is not an extraordinary and compelling reason for [the defendant's] release."). Accordingly, because Volkman has received a COVID-19 vaccine, the combination of his medical conditions and the COVID-19 pandemic is not an extraordinary and compelling reason for his release.

This conclusion is further bolstered by the current conditions at Volkman's facility. At Tuscon FCC, which encompasses Volkman's high-security facility—USP Tucson—and an adjacent minimum-security facility—FCI Tucson—442 staff and 1,796 inmates have been vaccinated against COVID-19.[5] Federal Bureau of Prisons, "COVID-19 Coronavirus," https://www.bop.gov/coronavirus/ (last accessed 8/4/2022). Since the COVID-19 pandemic began, thirteen inmate deaths and zero staff deaths have been reported. *Id*. USP Tuscon currently has one inmate and seven staff who have tested positive for COVID-19, as well as 841

---

[5] USP Tucson currently has an inmate population of 1,417, and FCI Tucson has an inmate population of 242. Federal Bureau of Prisons, "USP Tucson," https://www.bop.gov/locations/institutions/tcp/ (last accessed 8/4/2022); Federal Bureau of Prisons, "FCI Tucson," https://www.bop.gov/locations/institutions/tcn/ (last accessed 8/4/2022). The Court assumes the total number of vaccinations completed at Tucson FCC exceeds the total number of inmates housed at USP Tucson and FCI Tucson due to fluctuations in the inmate population.

inmates and 236 staff who have recovered from COVID-19. *Id.* Thus, the COVID-19 pandemic appears to be well-managed at his facility at this time.

For these reasons, Volkman's fear of contracting and suffering severe illness from COVID-19 is not a compelling and extraordinary reason justifying compassionate release.[6] While Volkman's age and medical conditions increase his risk of severe illness if he contracts COVID-19, he is vaccinated against COVID-19 and there is no reason to believe that COVID-19 presents a serious risk to Volkman at this time. Accordingly, the Court finds that no extraordinary and compelling reason exists for his release.

### ii. 18 U.S.C. § 3553(a) Sentencing Factors

Volkman has failed to demonstrate an extraordinary and compelling reason for his release, and thus the Court need not consider the 18 U.S.C. § 3553(a) sentencing factors. *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021) ("[D]istrict courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others."). Even considering these factors, however, the Court would be compelled to deny Volkman's Motion on this ground alone. Among the factors to be considered are the nature and characteristics of the defendant's offense; the defendant's criminal history; the need for the sentence imposed to reflect the seriousness of the defendant's conduct; the need to protect the public; the Guidelines range; and the need to avoid unwarranted sentencing disparities.

---

[6] Volkman also argues that even in the absence of the COVID-19 pandemic, his medical conditions are of such a serious nature that his release is warranted. While Volkman's purported medical conditions are not insignificant, they fail to rise to the rare and extraordinary level sufficient to warrant compassionate release. *See United States v. Maxwell*, 567 F. Supp. 3d 824, 831–32 (S.D. Ohio 2021) (finding extraordinary and compelling reason where defendant suffered two "life-altering medical events" that left him unable to care for himself); *United States v. Smith*, No. 15-cr-119 (S.D. Ohio Nov. 10, 2020) (Doc. 327) (finding extraordinary and compelling reason where defendant suffered from a long list of severe medical conditions, some of which were non-recoverable and rendered defendant non-ambulatory).

Judge Sandra Ammann, now retired, thoroughly considered these factors at Volkman's sentencing hearing, and the undersigned agrees with Judge Ammann's conclusions. The nature and characteristics of Volkman's offense are abhorrent. As Judge Ammann stated at Volkman's sentencing hearing:

> This Court presided over the Defendant's trial, and the testimony and evidence presented during the case support the Court's conclusion that the Defendant's conduct in this matter was appalling. He is an apparently well-educated physician who spent many years in the legitimate practice of medicine. He then embarked on a course of conduct that is inexplicable to this Court. His conduct has caused serious physical and emotional damage to many individuals and families, and resulted in the deaths of at least four of his customers/patients, and the jury has determined this beyond a reasonable doubt. There was evidence that his conduct contributed to the suffering of other individuals, both patients and their families. He chose to involve himself in these "pain clinics" in an area of Ohio that is infamous for the large[-]scale abuse of prescription narcotics. The trial testimony established beyond a reasonable doubt that a population of addicted individuals were coming simply to obtain drugs to feed their addi[c]tion. The Defendant ignored warning signs from pharmacies and from family members and continued to prescribe the drugs in order to be paid. The jury obviously rejected his claims that these pharmacies simply did not understand his style of practice of pain medicine. The clinics were operated on a cash-only basis; firearms were kept on the premises; testimony was presented that people would line up outside the clinics in the early morning hours, some coming from great distances, including from out of state. The Court concludes that a significant period of incarceration is clearly warranted by the nature and circumstances of the offenses of which the jury has convicted the Defendant, and by the need to impose just punishment and to reflect the seriousness of these offenses.[7]

---

[7] Judge Ammann further noted that "Defendant's remarks today and his *pro se* sentencing memorandum cause the Court grave concern. This Defendant has absolutely no remorse. He said so this morning. He has no insight into his behaviors and he is a truly dangerous man." (Doc. 476 at PageID 8276.) In a 2018 letter he penned to "DoctorsofCourage.org," he continues to deny any responsibility for his actions:

> I have nothing to apologize to [the relatives of my former patients] for. I was actually the victim in that grim scenario. These relatives, and most of the general public, have been duped by the government propaganda blaming and scapegoating pain doctors for opioid overdose deaths, while over 90% of the deaths resulted from street heroin laced with deadly fentanyl, smuggled in by drug cartels . . . . I also pray that the angry, bitter, hateful, lynch mob of relatives will ultimately realize that their government has victimized me, as well as all of them, by the cynical, vicious demonization of the one-third of adult Americans who have legitimate need for daily, strong pain medicine, and of the pain doctors who, at great risk to themselves, try to take care of them, out of compassion and concern.

(Doc. 576-1 at PageID 9824.) Volkman has since stated "I would today change nothing I said." (Doc. 578-1 at PageID 9833.) Today, the Court, like Judge Ammann, is deeply troubled by Volkman's mentality and lack of remorse for the pain, suffering, and death he has caused.

(Doc. 476 at PageID 8270–72.)  The severity of Volkman's criminal conduct cannot be overstated.  He knowingly and directly contributed to the opioid epidemic that has, and continues to, destroy lives, devastate families, and wreak havoc on the State of Ohio and this country. Volkman served vulnerable patients suffering from a myriad of serious physical and psychiatric conditions, and he abused his position of trust and transgressed the oath of his profession.  The evidence at trial established that over the course of roughly three years, Volkman distributed millions of addictive and dangerous controlled substances without any legitimate medical purpose, prioritizing profits above the lives and well-being of his patients and ignoring causes for concern throughout his path of destruction.  Twelve of Volkman's patients died during the relevant timeframe; the jury determined that the deaths of four patients—Kristi Ross, Steve Hieneman, Bryan Bringer, and Earnest Ratcliff—were caused by Volkman's conduct.  At trial, Steve Hieneman's mother testified that she approached Volkman and asked him to stop writing her son prescriptions because he had a bad heart and Volkman was "going to kill him," but Volkman ignored her concerns.  (Doc. 454 at PageID 6894–96.)

Accordingly, the Court concludes the sentencing factors set forth in 18 U.S.C. § 3553(a) do not justify a compassionate release.  The sentence imposed adequately reflects the seriousness of Volkman's conduct, the need to protect the public, and was within the Guidelines range. Although Volkman had no prior criminal history, the sentencing factors as a whole weigh strongly in favor of denying him compassionate release.

## III.    MOTION FOR APPOINTMENT OF COUNSEL

Independent of his Motion for Compassionate Release, Volkman has also filed a Motion to Appoint Counsel.  (Doc. 580.)  Volkman states he intends to file a motion to vacate pursuant

to 28 U.S.C. § 2255 and moves the Court appoint him counsel to assist him in preparing and filing said motion.[8]  Volkman's Motion is not well-taken.

The United States Supreme Court has held that "the right to appointed counsel extends to the first appeal of right, and no further." *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). Thus, "[a]n indigent defendant does not have a constitutional right to counsel in post-conviction proceedings." *United States v. Dickinson*, No. 1:14-cr-035, 2015 WL 5376460, at *3 (S.D. Ohio Sept. 14, 2015); *see also Cobas v. Burgess*, 306 F.3d 441, 444 (6th Cir. 2002) (stating a petitioner "does not have a right to assistance of counsel on a habeas appeal").  Rather, "[w]henever the United States magistrate judge or the court determines that the interests of justice so require, representation may be provided for any financially eligible person who . . . is seeking relief under section 2241, 2254, or 2255 of title 28."  18 U.S.C. § 3006A(a)(2)(B).[9] "The decision to appoint counsel for a federal habeas petition is within the discretion of the court and is required only where the interests of justice or due process so require." *Rogers v. Skipper*, 811 F. App'x 986 (6th Cir. 2020).  In determining whether to exercise its discretion to appoint counsel, the court should consider "the legal and factual complexity of the case, the Movant's ability to investigate and present his claims, and any other relevant factors." *Jones v. United States*, Nos. 2:19-CV-147, 2:16-CR-00166, 2019 WL 1858836, at *1 (S.D. Ohio Apr. 25, 2019) (citation omitted), *report and recommendation adopted*, 2019 WL 2194664 (S.D. Ohio May 21, 2019); *see also Camcho v. United States*, Nos. 4:10 CV 016500, 4:07 CR 0603, 2010 WL 4365479, at *1 (N.D. Ohio Oct. 28, 2010) (outlining instances in which federal courts generally

---

[8] The motion Volkman intends to file will be a successive § 2255 motion as he filed his first motion under Section 2255 on October 25, 2016.  (*See* Doc. 543.)

[9] 18 U.S.C. § 3599(a)(2) provides for the appointment of counsel for an indigent defendant "[i]n any postconviction proceeding under section 2254 or 2255 of title 28, United States Code, seeking to vacate or set aside a death sentence."  As a death sentence was not imposed in this action, this statute is inapplicable.

have endorsed the appointment of counsel in habeas corpus actions).  Appointment of counsel to represent an indigent defendant in a habeas proceeding has been found to be mandatory "only if a district court orders an evidentiary hearing or determines that counsel is necessary for effective discovery." *DeMathews v. United States*, Nos. 18-cv-439, 2:15-cr-52, 2020 WL 415894, at *1 (S.D. Ohio Jan. 27, 2020) (citing Rules 6(a) and 8(c) of the Rules Governing Section 2255 Proceedings in the United States District Courts).

Here, the Court finds that Volkman has failed to demonstrate appointment of counsel is warranted or required at this juncture as his Motion is premature.  Volkman has yet to file a § 2255 motion; instead, he merely contemplates filing one in the future.  *See, e.g., Dickinson*, 2015 WL 5376460, at *3 (denying request to appoint counsel where defendant had not yet filed a Section 2255 motion); *United States v. Whalen*, No. 4:09CR-19-JHM, 2014 WL 12531520, at *1 (W.D. Ky. Dec. 22, 2014) (same); *United States v. Wooden*, No. 1:03-cr-66, 2008 WL 5110790, at *2 (E.D. Mich. Nov. 26, 2008) (holding "the Court cannot appoint counsel at government expense to provide legal advice and represent [defendant] prior to the filing of a § 2255 motion.").  The Court has not authorized discovery or ordered an evidentiary hearing, nor does it have the information necessary to determine whether such actions are warranted.  Similarly, at this stage, Volkman has failed to present, and the Court cannot discern, any reason why the interests of justice require the Court to appoint him counsel in this matter.  Accordingly, Volkman's Motion to Appoint Counsel is denied.

**IV.    CONCLUSION**

For the reasons stated herein, Volkman's Motion for Compassionate Release (Doc. 570) and Motion to Appoint Counsel (Doc. 580) are **DENIED**.

**IT IS SO ORDERED**.

S/Susan J. Dlott
Susan J. Dlott
United States District Judge