IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| United States of America, | : | |
| | : | Case No. 1:07-cr-60(3) |
| Plaintiff, | : | |
| | : | Judge Susan J. Dlott |
| v. | : | |
| | : | **Order Denying Second Motion for** |
| Paul Volkman, | : | **Compassionate Release** |
| | : | |
| Defendant. | : | |
| | : | |

This matter is before the Court on Defendant Paul Volkman's Second Motion for

Compassionate Release. (Doc. 593.) The Government opposes Volkman's Motion, to which he

has replied. (Doc. 596; Doc. 599.[1]) For the reasons that follow, Volkman's Motion will be

**DENIED**.

I.      **BACKGROUND[2]**

On May 16, 2007, a grand jury in the Southern District of Ohio returned a multi-count

Indictment against Volkman, a former physician.[3] (Doc. 2.) After a thirty-five day jury trial,

Volkman was found guilty on Count 1, conspiracy to distribute controlled substances; on Counts

2, 3, 16, and 19, maintaining drug-related premises; on Counts 5, 6, 7, 8, 9, 17, 21, and 22,

unlawful distribution of controlled substances; on Counts 10, 11, 18, and 20, causing the death of

another by unlawful distribution of a controlled substance; and on Count 14, possession of a

firearm in furtherance of a drug trafficking offense. (Doc. 355.)

---

[1] After receiving an extension of time to file a Reply brief, Volkman filed two Reply briefs (Docs. 599, 600) and
three additional "supplements" without leave of Court. (*See* Docs. 601, 602, 603.)
[2] Most of the underlying facts are repeated from the Court's August 9, 2022 Order Denying Volkman's Motion for
Compassionate Release; Denying Motion to Appoint Counsel. (Doc. 582.)
[3] The Indictment also included charges against two of Volkman's co-conspirators, Denise Huffman and Alice
Huffman. Both co-conspirators pled guilty and testified against Volkman at trial.

On February 14, 2012, the Honorable Sandra L. Ammann, who originally presided over this case, sentenced Volkman to four consecutive life sentences on the unlawful distribution leading to death counts, to be served consecutively with each other and concurrently with all other counts except Count 14; 240 months of imprisonment on the conspiracy count and each count of unlawful distribution, to be served concurrently with each other; 120 months of imprisonment on each drug premises count, to be served concurrently with each other, the conspiracy count, and each count of unlawful distribution of a controlled substance; and 60 months of imprisonment on the firearm count, to be served consecutively to all other counts. (Doc. 420.)  Volkman is currently incarcerated at USP Tucson and has no estimated release date given the four life sentences imposed.  Federal Bureau of Prisons, *Find an Inmate*, https://www.bop.gov/inmateloc/ (last accessed 6/11/2026).

This case was transferred to the docket of the Undersigned on May 22, 2018.  (Doc. 557.) The post-conviction motions and appeals that have transpired have been extensive, most relevant at present being a prior request for compassionate release which the Undersigned denied in 2022, discussed *infra*.  For the sake of a more robust procedural history, the Court will briefly summarize Volkman's post-conviction filings.

On November 21, 2013, the United States Court of Appeals for the Sixth Circuit affirmed Volkman's convictions and sentence.  *See United States v. Volkman*, 736 F.3d 1013 (6th Cir. 2013) (Doc. 491), *cert granted, judgment vacated*, *Volkman v. United States*, 135 S. Ct. 13 (2014).  The Supreme Court of the United States vacated the judgment and remanded the case to the Sixth Circuit in light of *Burrage v. United States*, 571 U.S. 204 (2014).  *See Volkman v. United States*, 135 S. Ct. 13 (2014) (Doc. 499).  On remand, the Sixth Circuit Court of Appeals

affirmed Volkman's convictions and sentence in light of *Burrage*. *United States v. Volkman*, 797 F.3d 377 (6th Cir. 2015) (Doc. 505).

Volkman filed his first § 2255 motion in 2016, which the district court denied (*see* Docs. 550), and for which the Sixth Circuit Court of Appeals denied a certificate of appealability. *Volkman v. United States*, No. 17-3022 (6th Cir. Aug. 14, 2017) (Docs. 554). Then, Volkman sought, and was denied, compassionate release over risk due to COVID-19 and medical concerns. (Doc. 582.) The Sixth Circuit Court of Appeals dismissed the appeal of the Court's Order denying him compassionate release on September 28, 2022 for want of prosecution. *United States v. Volkman*, No. 22-3705 (6th Cir. Dec. 14, 2022) (Doc. 586). Volkman then filed a Motion for Leave to file a successive motion to vacate the sentence under 28 U.S.C. § 2255 (Doc. 587), which the Sixth Circuit denied. *In re: Paul H. Volkman*, No. 23-3557 (6th Cir. Nov. 17, 2023) (Doc. 589).

Volkman filed his now pending Second Motion for Compassionate Release on December 1, 2025 complaining that his age and medical issues entitle him to release from prison. (Doc. 593.) The Government responded in opposition on January 16, 2026. (Doc. 596.) Volkman filed a Reply in Support of Motion for Compassionate Release on February 23, 2026. (Doc. 599.)[4]

In denying Volkman's first Motion for Compassionate Release, the Court held that his medical conditions did not rise to an extraordinary and compelling reason for his release, but regardless, the 18 U.S.C. § 3553(a) sentencing factors did not justify his release. (*See* Doc. 582 at PageID 9841–46.) The Court's conclusions have not changed with respect to his Second Motion for Compassionate Release. As such, it, too, will be **DENIED**.

---

[4] As noted, Volkman also filed additional documents without leave of Court. (*See* Docs. 600–03.)

## II.    STANDARD OF LAW

The Court lacks authority to resentence a defendant, except as permitted by statute.

*United States v. Houston*, 529 F.3d 743, 748–749 (6th Cir. 2008).  Volkman seeks compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  Section 3582(c) provides as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c).

Assuming that the inmate has exhausted administrative remedies, the district court must (1) determine whether "extraordinary and compelling reasons" warrant a reduction, (2) ensure that the reduction is consistent with the applicable policy statements by the United States Sentencing Commission in U.S.S.G. § 1B1.13, and (3) weigh the relevant sentencing factors listed in 18 U.S.C. § 3553(a).  *United States v. Bricker*, 135 F.4th 427, 433 (6th Cir. 2025) (citing § 3582(c)(1)(A)(i)); *see also United States v. McCall*, 56 F.4th 1048, 1054 (6th Cir. 2022).  "Congress did not define what constitutes an 'extraordinary and compelling reason,' except to state that '[r]ehabilitation of the defendant alone shall not be considered an extraordinary and

compelling reason.'" *United States v. Hunter*, 12 F.4th 555, 561 (6th Cir. 2021) (quoting 28 U.S.C. § 994(t)), *cert. denied*, 142 S. Ct. 2771 (2022).

The § 3553 factors to be considered are: (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the need for the sentence imposed to reflect the seriousness of the offense; (3) the need to protect the public from further crimes of the defendant; (4) the sentencing guideline range; and (5) the need to avoid unwarranted sentence disparities among defendants with similar records guilty of similar conduct. 18 U.S.C. § 3553. These factors implicitly allow the Court to consider the amount of time served when determining if a reduction in sentence is appropriate. *See United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020). Also, district courts can consider the nonretroactive changes in law relevant to sentencing as part of its weighing of the § 3553(a) sentencing factors. *See Hunter*, 12 F.4th at 568–569. District courts are encouraged to be "explicit and particular with their factual reasoning" when they consider the § 3553(a) factors. *United States v. Jones*, 980 F.3d 1098, 1113 (6th Cir. 2020).

## III.    ANALYSIS

### A.  No Extraordinary and Compelling Reason for Release

Volkman contends that his medical conditions and age present an extraordinary and compelling reason for his compassionate release. He presents a litany of ailments to the Court. Some of these were previously considered when ruling on Volkman's first Motion for Compassionate Release.[5] Now Volkman, who is seventy-nine years old, claims he suffers from "numerous medical conditions [that] have been either ignored, untreated, or grossly

---

[5] His asserted ailments at that time included: type 2 diabetes mellitus; heart disease, including cardiac syncopal episodes and occlusion of right main coronary artery; chronic kidney disease; hypertension treated with three different medicines; liver disease; pancreatic insufficiency; obesity; and small vessel disease. (*See* Doc. 582 at PageID 9841.)

mismanaged" including: "Colonoscopy Surveillance Ignored"; "Unaddressed Pancreatic and Hepatic Abnormalities"; "Severe Gastrointestinal Disorders"; "Vascular Blockages and Arterial Spasms"; "Sleep Apnea and Pulmonary Complications"; "Sciatica and Orthopedic Decline"; "Spontaneous Epistaxis (Nosebleeds) and Autoimmune Concerns"; "Diabetes Management Failures"; "Cardiac Risks"; and "Assault-Related Injuries."  (Doc. 593 at PageID 10067–68.) Volkman complains that the Bureau of Prisons ("BOP") "cannot manage his chronic and complex health conditions" and is providing inadequate medical care.  (*Id*. at PageID 10068.)  In separate filings, he contends that he endured a cardiac event due to improper medication management by the BOP.  (Doc. 601 at PageID 10202.)  He also claims he was afflicted by pneumonia, for which he was hospitalized, and purports to have an inguinal hernia.  (Doc. 602 at PageID 10221, 10223.)

Accepting as true all of Volkman's alleged diagnoses, which are not insignificant, the medical conditions and his age nonetheless do not rise to the rare level of "extraordinary and compelling" sufficient to warrant compassionate release.  The applicable portion of the Sentencing Commission's interpretation of "extraordinary and compelling" under § 1B1.13 is as follows:

> (b) Extraordinary and Compelling Reasons.—Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:
>
> (1) Medical Circumstances of the Defendant.—
>
> (A) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (B) The defendant is—
>
> (i) suffering from a serious physical or medical condition,

6

(ii) suffering from a serious functional or cognitive impairment, or
(iii) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

(D) The defendant presents the following circumstances—

(i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;
(ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and
(iii) such risk cannot be adequately mitigated in a timely manner.

(2) Age of the Defendant.—The defendant (A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

. . .

(5) Other Reasons.—The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).

U.S.S.G. § 1B1.13(b)(1)-(2), (5).

Although Volkman notes that he uses a walker or wheelchair at times, limited ambulation does not equate to complete inability to provide self-care.[6]  (*See* Doc. 593.)  Additionally,

---

[6] Volkman argues he has a debilitated medical condition, invoking Federal Bureau of Prisons, U.S. Department of Justice, Program Statement 5050.50: Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3584 and 4205(g) (2019).  That statement defines debilitated medical condition as complete disability and being confined to a bed or chair or capable of limited self-care and confined to a bed or chair half of the time.  There is no evidence Volkman meets this standard.  Even if he did, the Court would find that the sentencing factors weigh against his release.

Volkman's conditions are being actively managed by the BOP medical staff as evidenced by his numerous BOP medical visits, referenced within Volkman's own filings and attachments. (*See* Doc. 596 at PageID 10153–55) (summarizing Volkman's filings). And when acute complications have arisen, as he references hospitalization for pneumonia, the BOP has provided intervention, including outside hospitalization. (*See* Doc. 602.) Because Volkman's conditions are being managed by the BOP and he remains capable of self-care within the facility, his medical circumstances do not present an "extraordinary and compelling" reason for compassionate release.

Once again, as the Court previously found, Volkman's medical situation stands in sharp contrast to cases where courts have found extraordinary and compelling medical grounds based on a total deprivation of self-care. These cases are incredibly rare. *See e.g., United States v. Maxwell*, 567 F. Supp. 3d 824, 831–32 (S.D. Ohio 2021) (finding extraordinary and compelling reason where defendant suffered two "life-altering medical events" that left him unable to care for himself); *United States v. Eubanks*, No. 3:06-CR-105-TBR, 2021 WL 3557653, at *4 (W.D. Ky. Aug. 11, 2021) (granting compassionate release to the defendant after two strokes that resulted in a debilitating medical condition where the defendant could not conduct self-care and from which the defendant was almost certain not to recover); *United States v. Smith*, No. 15-cr-119(2) (S.D. Ohio Nov. 10, 2020) (Doc. 327) (finding extraordinary and compelling reason where defendant suffered from a long list of severe medical conditions, some of which were non-recoverable and rendered defendant non-ambulatory). This is not such a rare case.

The Court finds that no extraordinary and compelling reason exists for Volkman's release.

### B.  Sentencing Factors Do Not Support Release

Even if the Court were to find an extraordinary and compelling reason for release existed, which it does not, the Court has already found and still finds today that the sentencing factors do not weigh in favor of Volkman's compassionate release.  *See United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021) ("[D]istrict courts may deny compassionate release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others.").  Among the factors to be considered are the nature and characteristics of the defendant's offense; the defendant's criminal history; the need for the sentence imposed to reflect the seriousness of the defendant's conduct; the need to protect the public; the Guidelines range; and the need to avoid unwarranted sentencing disparities.

The Court previously held and finds no basis to disturb its ruling that "the sentencing factors set forth in 18 U.S.C. § 3553(a) do not justify a compassionate release."  (Doc. 582 at PageID 9846.)  Further, Volkman's sentence of four consecutive life sentences plus five years of imprisonment "adequately reflects the seriousness of Volkman's conduct, the need to protect the public, and was within the Guidelines range.  Although Volkman had no prior criminal history, the sentencing factors as a whole weigh strongly in favor of denying him compassionate release."  (*Id*.)  This is still true today.

The nature and circumstances of the offense at issue are abhorrent and incredibly serious.  Volkman's sentence certainly reflects this.  The Court previously highlighted the following statement by the Honorable Sandra L. Ammann at the time of sentencing, in which she describes the severity of the conduct and Volkman's disregard of human life and medical ethics:

> This Court presided over the Defendant's trial, and the testimony and evidence
> presented during the case support the Court's conclusion that the Defendant's
> conduct in this matter was appalling.  He is an apparently well-educated physician
> who spent many years in the legitimate practice of medicine.  He then embarked

9

on a course of conduct that is inexplicable to this Court.  His conduct has caused serious physical and emotional damage to many individuals and families, and resulted in the deaths of at least four of his customers/patients, and the jury has determined this beyond a reasonable doubt.  There was evidence that his conduct contributed to the suffering of other individuals, both patients and their families.  He chose to involve himself in these "pain clinics" in an area of Ohio that is infamous for the large[-]scale abuse of prescription narcotics.  The trial testimony established beyond a reasonable doubt that a population of addicted individuals were coming simply to obtain drugs to feed their addi[c]tion.  The Defendant ignored warning signs from pharmacies and from family members and continued to prescribe the drugs in order to be paid.  The jury obviously rejected his claims that these pharmacies simply did not understand his style of practice of pain medicine.  The clinics were operated on a cash-only basis; firearms were kept on the premises; testimony was presented that people would line up outside the clinics in the early morning hours, some coming from great distances, including from out of state.  The Court concludes that a significant period of incarceration is clearly warranted by the nature and circumstances of the offenses of which the jury has convicted the Defendant, and by the need to impose just punishment and to reflect the seriousness of these offenses.

(Doc. 476 at PageID 8270–72.)

Judge Ammann further noted that Volkman demonstrated no remorse.  The Undersigned finds that sentiment pervasive in his continual filings with this Court and still a relevant observation.  Judge Ammann noted that "Defendant's remarks today and his *pro se* sentencing memorandum cause the Court grave concern.  This Defendant has absolutely no remorse.  He said so this morning.  He has no insight into his behaviors and he is a truly dangerous man."  (Doc. 476 at PageID 8276.)  In a 2018 letter Volkman penned to "DoctorsofCourage.org," he continues to deny any responsibility for his actions:

I have nothing to apologize to [the relatives of my former patients] for.  I was actually the victim in that grim scenario.  These relatives, and most of the general public, have been duped by the government propaganda blaming and scapegoating pain doctors for opioid overdose deaths, while over 90% of the deaths resulted from street heroin laced with deadly fentanyl, smuggled in by drug cartels . . . . I also pray that the angry, bitter, hateful, lynch mob of relatives will ultimately realize that their government has victimized me, as well as all of them, by the cynical, vicious demonization of the one-third of adult Americans who have legitimate need for daily, strong pain medicine, and of the pain doctors who,

10

at great risk to themselves, try to take care of them, out of compassion and concern.

(Doc. 576-1 at PageID 9824.)  Volkman has since stated "I would today change nothing I said." (Doc. 578-1 at PageID 9833.)  In his recent filings, Volkman makes statements diminishing the severity of his conduct and sentence, stating that the sentencing factors "no longer justify continued incarceration of an elderly, medically fragile inmate" and that "[h]e has now served a substantial term of incarceration that fully reflects the seriousness of the offense."  (Doc. 600 at PageID 10197.)  Volkman's statements continue to reflect his utter lack of remorse and accountability for his criminal conduct, just as they did at the time of sentencing.  Having served 14 years of imprisonment is in no way comparable to the life sentences to which Volkman was sentenced.

The severity of Volkman's criminal conduct cannot be overstated.  He knowingly and directly contributed to the opioid epidemic that has, and continues to, destroy lives, devastate families, and wreak havoc on the State of Ohio and this country. Volkman served vulnerable patients suffering from a myriad of serious physical and psychiatric conditions, and he abused his position of trust and transgressed the oath of his profession. The evidence at trial established that over the course of roughly three years, Volkman distributed millions of addictive and dangerous controlled substances without any legitimate medical purpose, prioritizing profits above the lives and well-being of his patients and ignoring causes for concern throughout his path of destruction. Twelve of Volkman's patients died during the relevant timeframe; the jury determined that the deaths of four patients—Kristi Ross, Steve Hieneman, Bryan Bringer, and Earnest Ratcliff—were caused by Volkman's conduct.  At trial, Steve Hieneman's mother testified that she approached Volkman and asked him to stop writing her son prescriptions

11

because he had a bad heart and Volkman was "going to kill him," but Volkman ignored her concerns. (Doc. 454 at PageID 6894–96.)

Accordingly, the Court concludes, as it did in ruling on Volkman's First Motion for Compassionate Release, the sentencing factors set forth in 18 U.S.C. § 3553(a) do not justify compassionate release. The sentence imposed is severe for a reason. The sentence adequately reflects the seriousness of Volkman's conduct, the need to protect the public, and was within the Guidelines range. Although Volkman had no prior criminal history, the sentencing factors as a whole weigh strongly in favor of denying him compassionate release. The underlying facts are among the most egregious the Court has seen. The public needs to be protected from this dangerous conduct, and Volkman will continue to serve his sentence to completion. There is absolutely no basis to disturb Volkman's sentence.[7]

## IV. CONCLUSION

As there is no basis to grant Volkman's Second Motion for Compassionate Release (Doc. 593), his request is **DENIED**.

**IT IS SO ORDERED.**

S/Susan J. Dlott_____
Judge Susan J. Dlott
United States District Court

---

[7] To the extent Volkman continues to serially file motions for compassionate release, the Court is within its authority to rely exclusively on the sentencing factors to justify his continued incarceration. *See Elias*, 984 F.3d at 519.